All right, once you're ready, we'll hear from Ms. Reed. May it please the Court, my name is Michelle Reed, and with me today is Stephen Sebold. We represent Petitioner Maria Perez-De Vigil, pro bono through Human Rights Initiative of North Texas. Respondent is asking this Court to adopt a long disproved myth that victims of domestic violence can leave their relationships and end the abuse simply by moving out. Maria was threatened with death on countless occasions at the hand of her own husband. After a decade of horrific abuse, Maria left her husband, but the threats continued, with Vigil stalking Maria at work, sending armed killers to her, hired killers to her work, and at last, after she filed for a divorce, threatening her that he would pay $40 to have her killed rather than pay child support. The ultimate question presented to this Court... So the question isn't whether she left the abuse, it's whether she left the alleged, and I'll call it an alleged particular social group because I have some substantial doubts about that, but for the moment, we'll say that's a particular social group. The question is whether she left the group, not whether she left the abuse, because you cannot define the group by the abuse. You're right, Your Honor. Okay. And also, please address not the social policy, but the law, and the law is a particular social group. So, go ahead. That segues right into where I was going. The ultimate question is whether Maria is entitled to asylum or withholding of removal based on her membership in the particular social group of Salvadoran women in domestic relationships who are unable to leave the relationship. Today I will focus on three primary issues. First, does moving out of the marital home preclude membership in this social group? Let me ask one basic question here, which I've... The earlier case talked about being married. This one talks about a domestic relationship, and the social group may, particularly in a Catholic country, be different. So what's the significance of this change in the definition of a social group between married and in a domestic relationship? Was she actually married? She was actually married. But why did they change that? Why is it... She actually fits both social groups, and so I was using the single social group as sort of a matter of, but she fits both social groups. So she fits married Salvadoran women who are unable to leave the relationship, and she also fits the Salvadoran women in domestic relationships who are unable to leave the relationship. The question sort of goes towards the question of divorce, and when she received her divorce. So she applied for a divorce, petitioned for a divorce while in the country, in El Salvador, but the divorce wasn't granted until after she had left El Salvador. That's only because she left before it was granted. I mean, there wasn't any holdup in the granting of it. It was just, you know, divorces take a few months and whatever, and she left before it could be granted, and it was granted in El Salvador. So obviously, she was able to leave the marital relationships in El Salvador. She legally got a divorce that occurred in El Salvador, right? She ultimately received a divorce, but not... From an El Salvador court. Correct. Okay. So it happened in El Salvador, and the only reason she wasn't there is because she had left, right? It wasn't some that they refused to grant it, or we don't grant divorces or whatever. They granted the divorce in the due course of proceedings in El Salvador. There's no evidence that they wouldn't grant it, right? Well, I'll present that there's no evidence that they wouldn't grant it. There's no evidence that she would have survived had she proceeded, continued with that divorce given the threats that were made by her husband that were backed up by prior threats that were pretty significant acts of violence. So I don't think we can say for sure definitively that she would have necessarily gotten the divorce because she may not have made it that far. And your answers just now tie back to your first, the effort you were starting to go in, which was moving out doesn't mean you've left the membership, correct? That's correct. Because the BIA said, oh, no more abuse now that she's left, and you're saying there's no substantial evidence to support that because she said after she left, he said, I'll get hit men and kill you, and he stalked her. So the simple failure of fact you're saying the BIA made was she walks out maybe trying to get divorced, maybe trying to live to the time she gets divorced, but in that time, she was abused, BIA made a fact-finding error as to that. Is that your position? That is correct. But that's again based on the abuse, not the relationship. She got the divorce. She left the relationship. She was free to have other relationships. She didn't live with them anymore. He never came to her new house. He never touched her. So he did continue to call her and all of that, I understand that, and I'm not getting into that because I think this man was a terrible man from all the evidence here. That said, the question is whether the evidence compels a contrary conclusion to the notion that she left. She did, in fact, leave. I think there's two issues that are raised by this. First, I think that you could even look at it as a question of law that could be reviewed de novo in the sense that they misapplied the standard of what it means to leave a relationship. Leaving a relationship does not necessarily mean continuing the marriage. It does not mean that you continue in the home. We can see how that relationship continued even after she left through his stalking her at work, stalking her at her parents' home, threatening phone calls, hired hit men. All of those things continue a relationship. And when you look at the definition that the BIA made in ARCG, they say unable to leave the relationship. They don't say unable to leave the marriage. They don't say divorced. They don't use that. They say unable to leave the relationship. And so our position is that she was unable to leave the relationship because even after she physically separated herself from him, and even after she applied for a divorce and petitioned for a divorce, she had significant access. I mean, he could still call her here. There's no evidence in the market that he could have the number. Okay, but I'm just saying the fact that somebody can call you, you can go anywhere in the world and be called. So I guess I'm having trouble with the idea that your position is essentially you can never leave a relationship. So as a matter of law, BIAs can no longer find that somebody left a relationship because, at least in El Salvador, you just can't leave a relationship. Even if you move out and the guy never comes to your house, he's, you still haven't left the relationship. I mean, that's your theory as a matter of law. That is not the theory that we are presenting here. The theory that we're presenting here is, on the legal question, is moving out of a marital home, does that preclude you from being considered in this relationship, unable to leave the relationship? That's, I think, the legal question presented. The problem is, we have a very differential standard of review on fact findings. And the question is, does it compel a conclusion to the contrary? Not could the BIA have come out the other way? Again, assuming arguendo that this particular social group is valid, which I have grave doubts about, but even assuming that, we have to give deference to the BIA's conclusion unless the evidence compels a contrary conclusion. And so the question is whether him continuing to call her means she hasn't left the relationship, as essentially a matter of law, compels a contrary conclusion. And I just, I have trouble with that. And let me address your concern. In the words of the BIA opinion, the BIA found Vigil did not abuse Maria during this two-year time period when she was living on her own. Now let me go through some of the facts that I think show that no reasonable fact finder could make that statement. When she left the home, even though she was continuing to live separately, she was abused repeatedly, mentally, and she was attacked. He continued to threaten her by telephone at her parents' home and at her work. Tell me where she was attacked. Well, when she went to work, when she went to work, she was trying to escape from Vigil and he got into the, or he chased her car trying to get to her. I didn't even attack her. Chased her car. I mean, again, I'm not in any way saying this guy acted well or that I would want anybody to treat me that way. That isn't the question. The question is you're saying, and I understand the argument about mental abuse, but he never touched her after she left. That's correct. Okay. That there is no touching. However, I think it would still be considered an attack if you'd had a gun held to your head before. Well, I mean, the problem you have is, again, we're having to say the evidence compels a contrary, not if I was a juror in a case, what would I think? But the evidence compels a contrary conclusion. We have cases where gang members threaten people and we say, well, you were threatened, but you weren't attacked. And so we have those kinds of cases and we, this panel, have to deal in the world we're in. And the world we're in, as Congress hasn't said, all victims of domestic violence from other countries are free to come here and get asylum. It could say that. And in the VAWA circumstance, for example, it says that for people that are married to And whether it should say for that for the world up to us, we've got to play the hand we're dealt, which is this particular social group and all that. Understood. So let me address a couple of issues that were raised by your comments. First of all, I think you're right, which is I don't think the question of this social group is necessarily presented here in that the BIA recognized the social group and the DOJ does not contest it, contests her membership in it, but does not contest that this is an unparticularized social group. It was conceded below. It's not been argued here. Has any circuit disagreed with the ARCG test as to cognizable groups? Are you aware of any circuit yet saying that that makes for an unworkable cognizable social group? I have not. Okay. So go ahead. So it wasn't presented below, hasn't been presented to us, and no circuit has yet disagreed with that concept. That's right. Okay. So with that said, then we walk back to where we are, which is, as I stated before, I think there's a legal question, but I think there's also that there is a, I think you can find under the substantial evidence that there is not substantial evidence here, and let me walk through each of those. Continued to threaten her by phone at her work. Continued identified hit men and had them stationed outside of her home. Chased her, her car, at work. And then one month before she left El Salvador, called her and threatened that he would pay to have her killed rather than pay child support. So all of this in our position is an ongoing psychological and mental abuse on Maria, regardless of whether they physically live together. And he continued to exercise control and abuse her. And we know that in Ray Acosta says, you can have emotional and mental abuse. And so the question presented here is not, is it enough, and I want you to weigh the facts in that sense of, let's weigh whether or not this is, the question that I think we're presenting here is that the court in its opinion, the BIA in its opinion, essentially used physical presence or physical touching or physical abuse as mandatory. When you look at that opinion on the record at page nine, they're focused on respondent moved out of the home. Husband did not come to the respondent's rental home. She was not forced to return to live with him. And we think it is an untenable position that when you look at the history of violence in this relationship, and then you couple it with the continued threats that are very likely real given the physical violence that existed previously, we think it is untenable to require that he actually hit her in order to- I realize the government hasn't raised it, but I want to just be clear. Is there any evidence that this man persecuted anyone else in this group? Is there any evidence that this husband went and abused other women who he was not married to? I don't believe that's presented in the record. Okay. Is there any other evidence that anybody else abused her other than this alleged hit man that he hired, but anybody just randomly abused her because of her membership in this group besides him? I don't believe that's- Because I am just flabbergasted at the notion that this is on account of. This isn't on account of her membership in a group. This is because she was his wife, and he wants to control his wife. Again, I disagree with that as an approach to marriage. That's not my point. But how is this on account of? Because the social group that is defined is Salvadorian married women or women, whichever one you're using, in a domestic relationship who are unable to leave the relationship. He is abusing Maria because she's not able to leave. She is not able to escape his abuse, and therefore that is on account of. That is at least one central reason. But it's not because she's in a group like in a country that persecutes Christians. So X is a Christian, and they persecute him because he's a Christian, and they'll persecute Y because he's a Christian. But if it's your next door neighbor, and they just don't like you, and they start persecuting you, and you happen to be a Christian, then it's not because you're a Christian. It's because they're your next door neighbor, and they don't like your trees or whatever. So what I'm saying is she's only in this group because he abused her, not he abused her because she's in the group. I don't think that the social group is set up in a way to incorporate abuse into it. That's why it's phrased in the way it is, that they're unable to leave. I would agree that here there hasn't been that fact inquiry. Certainly. And I always thought the group, the ARCG logic, was on the notion that in these cultures, some of them on close inquiry, we would determine that the man perceived the woman to be property, and therefore that group was a group where instead of human, they become property, and you can do with property what you want. That's the group. That is correct. If I could ask one other question, because you've been asked a lot of questions. My difficulty debating the finer points of substantial evidence as to whether she left the group is that the BIA in their very succinct opinion seemed to misunderstand the IJ's finding that there even was a group. The IJ had found the opposite, that this isn't some of the questions that my colleague's been asking. And you acknowledged that in footnote four. So we're in a sort of artificial world. Why wouldn't it be better for us to remand to the BIA to make sure it understood that the IJ had said this wasn't a cognizable group? We get the detailed fact inquiry, all aspects of it. Was there police acquiescence or participation? Could she relocate? Everything gets fleshed out more rather than these very conceptual questions. Your Honor, I think that would be one option. Also, there was a decision from the 11th Circuit in the last couple of weeks addressing this issue and making the point that the situation in El Salvador from the standpoint of the government is changing. And so, you know, this is something that we need to get the position of the board on too, I would think. Did you see that 11th Circuit decision? I may have, but I don't have it in front of me right now. Well, it's particularly, it happens to have to do with El Salvador. And it says that the government's position, apparently the El Salvadorian government has been subject to a good deal of international abuse, you might say, because of this very problem. And they're making, according to this opinion, some effort to alter the situation. And the 11th Circuit actually had that point made a couple of times in their opinion. So I guess the question for the board would be, is this any longer? Is your position altered by this emerging fact, apparently? So. And I, to answer that quickly, I think that would go to the question of future persecution as opposed to past persecution. Okay. And that case is Menjivar-Cibrian, 2018, WL1415126. It's a March 22, 2018 decision on the 11th Circuit. So, anyway. Thank you. You've saved time for rebuttal after all that, but at least you made your trip here worthwhile. All right. All right. Mr. Harling. May it please the Court, Nicholas Harling for the respondent. The record in this case demonstrates that Perez was able to leave her marital relationship because she is no longer married and was able to leave her domestic relationship because she moved to a new home. To reverse the board's findings, Perez must convince this Court that all reasonable fact-finders would be compelled to reach an opposite conclusion of the board. What about Judge Higginson's concern that the board misapprehended the IJ and we should send it back for this to be clarified? I'm not sure that I understood Judge Higginson. It's my understanding that in this case what the IJ said is the harm in this case rose to the level of persecution, and that under ARCG, the proposed social group is cognizable. But what the IJ then said is you're simply not in that group. So I don't believe that there was a misapprehension, but perhaps Judge Higginson has more to say on that. Well, it's just reading their opinion, they say they agree with the IJ that Salvadoran women in domestic relationships who are unable to leave is a cognizable social group. I thought the IJ had found the opposite. I don't believe so, Your Honor. I believe the IJ simply just said you're not in that group, that it is cognizable under ARCG. Probably you should continue. I'm quite sure you're wrong, but go ahead. Okay, so we'll put that aside. Why did you not challenge A, this particular social group, and B, the on-account of the group part of this whole morass? At this point before this court, I was not able to... No, I mean you, Ustedes, all of y'all. Well, that's the wonderful... In starting with the IJ, the government is allowed to show up and take positions. Why has this been allowed to be these ill-formed groups continue to just kind of be floating around and y'all aren't taking it on? In this case, this is the hand that we are dealt. The way the immigration statute is read for the immigration judge and the Board of Immigration Appeals, the government is represented by the Department of Homeland Security. When it switches into the Article III courts, my office at the Department of Justice comes and represents the government's position. Okay. I appreciate you personally. I'm talking about the United States of America, however formulated, is the other party to the petitioner here, correct? Correct. And that thing that is the versus to the petitioner here, why have they not addressed these issues? That's my question. What's interesting about ARCG is, in ARCG, the Department of Homeland Security stepped forward and said, we do concede that in that particular case, and these are all fact-intensive cases, that in that particular case, the harm in that case rose to the level of past persecution and DHS conceded that that proposed social group was cognizable. In that case, the case was ultimately remanded back to the board and maybe ultimately the immigration judge just to determine whether in that case, the government of, I believe it was Honduras, was unable or unwilling to protect that individual. So at this point, there's no real reason to, or really no real basis to challenge ARCG because the holdings, if you will, resulted from concessions by the government. But this case is not about ARCG or the ability to challenge ARCG. It's not necessary in this case. There is no compelling evidence to reverse the agency's findings that this, that Ms. Perez was able to leave her marital relationship and was able to leave her domestic relationship. So your counsel opposite has very passionately made the argument that actually there is a reason to challenge it because although she physically left, she got in her car and she went somewhere else, she was not free of this man because he kept calling her and stalking her and all of that. What's your response to that? Well, the reason why in this case and in many other cases like the Eighth Circuit's Fuentes case, the reason why they focus, among many other factors, that there was a physical separation, she moved to the new home, is that's the, that's one of the clearest and most important indicators that you have left a domestic relationship when you're able to physically move and reside in a new location. Now as Judge Haynes- Fuentes, was there the hiring of hit men and the stalking and the chasing? No, these are all factually different. There weren't in that, in Fuentes. In fact, the case- Well, I'm not sure they would dispute that that person did leave. Their point here, I think their point is that the BIA found factually that Perez was able to leave, and I'm going to quote, because vigil did not abuse her during the two-year period when she was living on her own. And therefore, the question becomes, is that the government's position that it is not abuse when death threats are made against you, when a hit man is hired, when a person chases your car, is that your position that doesn't equal abuse? Your Honor, the government reads the board's statements of no longer abuse as being, referencing the physical abuse. Now, of course, the other experiences, the harassment, the death threats, the hit men, those are all present in this case, but they don't account for physical abuse. And I'm not saying that the only way to establish this is to have a cessation in the physical abuse, but as was pointed out, the question is, is there compelling evidence that every reasonable fact finder would excuse the ability to move out, but say, no, no, no, these other acts that you experienced, however atrocious, also indicate that you are in a continued relationship. It's problematic, because as Judge Haynes pointed out, you can get a phone call anywhere. They're unilateral acts. I mean, when we talk about a domestic . . . Actually, you can also hire a hit man anywhere. That's true. I mean, these are unilateral acts. I guess I'm just asking the question, is it the government's position that the BIA was right that she didn't experience abuse, even though hit men were hired and she was chased? Is that your position? That is the government's position, because the government reads the reference to abuse to be physical abuse. She was no longer physical. Okay. And what's the best case that says that abuse has to be physical abuse, i.e. touching or dragged back to the house? There's not a case that I can cite, but I will tell you on the facts of this case, if you look at the sum of the abuse, the horrific abuse, admittedly, that this woman experienced, for years she was physically and sexually abused. When she tried to leave, often he would pull her back, force her to reside with him. However, at one point, she was able to physically move to a new home. All of that ended. You say all of that, but you just mean the actual raping. I mean the years of horrific physical abuse ended. Correct. So that's what it comes down to. The BIA is, I think, you're trying to insert the word physical into this analysis. I don't see any other way you could read the Board's wording and see otherwise. Admittedly, it was not as clear as I wish it were on that point. So I'm looking at the record at 106. This is the IJ's opinion. The court, however, is not persuaded that any of the social groups articulated by the respondent are cognizable under the act. So that's what Judge Higginson is referring to. So assume that I'm reading that correctly and that the IJ actually did not find a cognizable group and also found that she left the relationship. I agree. The IJ found she left the relationship, absolutely did find that. Does that fact mean we should remand to the BIA for reconsideration of what the IJ actually found? I don't believe so, because on the facts of this case, it's not necessary to affirm the Board's decision. So we could assume, of course, if the IJ is correct that there is no group, we're done. If we assume arguendo that there is a group, then she left it. She wasn't a member of it anymore under both the IJ's analysis and the BIA's analysis. Or if you read the Board's decision to say that the Board just didn't address it, that factor, didn't address whether it was cognizable, just addressed what it was. So assuming arguendo, that's what you do, you assume arguendo that we're not arguing this particular social group. We're just saying you left it. Now, there's been a big discussion about sort of leaving physically versus sort of leaving mentally. I guess the question to me there is, how would you define domestic relationship and is that something we need to send back to the BIA for further explication? Because if domestic relationship means living together, which is kind of what it's been a euphemism for, then she left that. If we're talking about marriage, she left that. But if we're talking about connection in some way with somebody that you've had a prior sexual relationship with, let's say consensual sexual relationship with, then arguably she didn't leave that. So can you help us with that? I think the best point for the government on that would just be that it wasn't raised by the opposing counsel, that it's not really whether this... The definition wasn't. The definition, I mean... But doesn't the definition matter to this discussion we're having? Because if domestic relationship implies living together, sharing a home, that's what domestic relationship means. They clearly didn't do that anymore for two years. Nobody's arguing that at all. And if that's it, then we're done. No contrary evidence, much less one that compels it. But if it means something else, something more metaphysical, then we get into this debate that we've been having with both of you. I mean, it's an interesting point. I mean, we're not in the posture of a statutory interpretation. If we were, you could say we could look at the widely accepted definition or the legally accepted definition. But are we in the context of... We're not in the context of criminal law, so we're not talking about criminal domestic violence. We're talking in the civil context. But again, I just don't know that it's... All this would make for a queer case, but it's not... The government's position is not required to decide... I mean, you have marriages where one spouse doesn't live in the same house as another spouse. They're commuting. Would that not be a domestic relationship? On the hypothetical, it might not. But on the facts, in this case, we don't have those facts. But it would still be a marriage. And the fact is, she left the marriage. Right. She was able... The question is not... In Petitioner's Brief on the point of marriage, the Petitioner's Brief focuses a lot on when the divorce became final, when the marriage ended. But it's really a question of her ability. And so, as soon as she wanted to get the divorce, it was in March of 2013, she applied for the divorce. She had that divorce by December 2013. She didn't have a commuting relationship where during the week she's living somewhere and then coming back on the weekend and living with him and considers that her permanent home. There's none of that. And unlike in ARCG, where the board talks about there might be cases where there would be societal, religious, or legal constraints on the ability to obtain a divorce, on this record, none of that is here. So I want to... On the domestic relationship point, because they didn't raise a definitional attack on that, you're saying that's not before us, we shouldn't remand that to the BIA for consideration? Correct. I don't believe that would be necessary. Now, what about the on account of? Why did you all not challenge the on account of? Because I still... I mean, I understand what Judge Higginson's saying about he views her as property. But I still don't see that as being part of a group. The fact that men might view women as property, to me, we've already said women is too broad a group. I don't... He... She was his wife and that's his problem with her. She's trying to leave him and he doesn't like it. She stands up to him and he doesn't like it. There's no other woman he feels that way about, whether she's in a relationship she can't leave or not. It's not like, you know, you're persecuting a Christian A, Christian B, and Christian C, like we see in some countries, or political opinion and everybody gets persecuted for that political opinion. So how can this be on account of and why did you all not, you in the big global goo, challenge that? I can speak to it in the opening. I mean, in the answering brief, the government didn't challenge it because the immigration judge and the board didn't make findings that there was or wasn't a nexus. These are usually three parts. Does the harm rise to the level of persecution? Is there a protected ground and was that harm inflicted on the nexus on account of the ground? So there wasn't a nexus finding in this. If you don't have all three, you don't have a case. And so when the agency made the finding that she wasn't a member of her proposed social group... You were done. That's it. That's enough. But if we send it back to the BIA for any of these issues that have been explored, should we send it back for that as well? If you send it back, the board could make a determination on the nexus issue, especially if you request that. But in the absence of that, they may not because they may be able to dispose of it. No, and I understand. I'm not saying they need to make an irrelevant finding, but if they were to find this is a cognizable group and she didn't leave the relationship because of this continued interaction, if you will, whatever you want to call it, his continued behavior, then I think you have to get to the nexus, right? That would have to be part of the evaluation on remand because it wasn't addressed previously because it didn't need to be. Correct. You have points 1, 2, and 3. We stopped at 1 with the IJ, 2 with the BIA. But if you get past that, you've got to go to 3 and the on account of. That is correct. And maybe that has to go back to the IJ for fact findings to see if he abused other women in this. It may. And just briefly, Judge King, you mentioned the Eleventh Circuit decision. Unfortunately, I am not familiar with it, but if I understand, you suggested that perhaps the Eleventh Circuit found that due to international pressure, the Salvadoran government, or I'm not sure which country it was, has increased their efforts to protect women. If it is an increase in their efforts, then I don't believe that merits remand on this particular case because we're looking at how it existed at the time. Now if it were the reverse, if things had deteriorated, protections had deteriorated for victims of domestic violence, then if the petitioner saw that as being impactful to their case, the proper remedy would be a motion to reopen with the board based on those new country conditions. Let me ask you something. We haven't talked about the role of the government up until this point in this case. So tell me again what the significance is of the role of the government involved. Yes. I would like to address, and I believe you're telling me, that is in the context of her cat claim. In the context of her cat claim, the record demonstrates that the Salvadoran police did not condone or acquiesce to the abuse. I mean, there's numerous examples of the steps that specifically to her, and more generally the government of El Salvador does for domestic violence. Specifically to her, the police commissioner and another police officer helped her get a protective order. The judiciary issued the protective order. The judiciary ordered that vigil undergo counseling and extended the protective order upon request. Importantly, most importantly, the police commissioner personally moved Ms. Perez to a new home, and that is what ended the prison. But the BIA doesn't – when you stress the word personally, that would not go to acquiescence, right? To assess acquiescence, we have to look at whether they acted under color of law. Well, I think what I'm saying personally – Am I right about that? I don't want my wording to confuse you. I'm not saying that because he personally did it, that it was done outside of his role as a police officer. There's no evidence – It was delegated. Yeah, there's no evidence in the record that this was done after hours, off the clock. I don't know. That would be vital, right? Because we have a unique situation here where the police chief happens to be a co-worker. So my question to you is, did the BIA distinguish between color of law activity and personal co-worker activity? First, I would argue that it's not vital, because there's other – there's plenty of evidence to demonstrate that there was no acquiescence. And the government's otherwise – and additionally, the government would argue that in pointing that the commissioner moved her – I mean, he's a police officer. I don't know that there's any evidence that it was done in any other way. If it were the other way and off the clock the police officers were helping him, we would be hearing about it. I mean, but there's no question – put that aside. There's no question that it was at work when the police commissioner and another police officer noticed, I think it was scarring on her hand, and they said, are you being abused? You really need to go see this other officer who is the head of – I think it was family services, family protective services, something like that.  That officer was instrumental in getting the protective order out. Right, but the point isn't getting a protective order. The point is, do they enforce a protective order? I thought repeatedly protective orders were gotten, but the record reflects she is brutalized sexually in spite of them. What is important is the acquiescence. This Court has case law that there's no requirement of, quote, complete security in these matters. Complete security. Complete security. It was Tamara Gomez. The lack of complete security did not rise to the level of state action necessary. But you can't turn to – the police can't, in their official capacity, be blind to ineffectual protective orders, constant, repeated raping, and say, well, later on, we're going to help her out into some other place. I don't see that that's a clear-cut, no-cat violation. I think what we've got is we've got a mix. The police are not a monolith. They're different individuals. We have – I think in the record, there's even talk or suggestion that the police officers that went to her home, they actually lived near her, even though she was quite remote. And so I wondered, when I was reading the record, if those police officers might somehow be departmentally different than the police officers where she worked. But I don't know. Why was this guy not prosecuted for rape? Plain and simple. I mean, I think that's a fair question here. I'm not familiar with what the status of the law is if spousal rape is recognized in El Salvador. I would hope that it is, but I don't know. Well, what about threatening death? I would imagine that murder of your spouse is a recognized crime in every country. Now, interestingly, on that point, the record is clear that although there was the hitmen that vigil said, these are hitmen, and we know what hitmen do, there's no evidence that she reported that to the police. So for the hitmen aspect – and it's very important to keep it separate. A lot of these facts, are we looking for whether they left the relationship, or are we looking to whether it was government acquiescence in the CAT context? But at least in the CAT context, she clearly states, I didn't tell the police about the hitmen. So they can't be faulted for not doing anything there. And again, I would point out that – So if the law of El Salvador does not permit filing a charge of rape against a husband on a wife, is that acquiescence? If the government of El Salvador doesn't recognize spousal rape, is that acquiescence to spousal rape? Yeah. I'm not sure. Is the quick question. Okay. I'll let you – we gave her a little bit of extra, and I'll let you wrap up in like one or two sentences. Just to make sure, I believe I've covered all the points. If there are no further questions, the government would request that this court deny the petition for review. Thank you. Okay. Thank you. Ms. Reid? I'd like to address a few issues that have been raised. First, the social group at issue. There are two social groups at issue, married Salvadoran women in domestic relationships who are unable to leave, and Salvadoran women in domestic relationships who are unable to leave. The BIA found, recognized those social groups, and the government doesn't challenge it. So I don't think that is at issue here. I think the only question is the unable to leave question. And also, there's additional – I think clearly the facts that he continued to abuse her, maybe not physically, but emotionally and psychologically following that relationship, that she was unable to leave it. I don't think that opens the door to every relationship going on forever. When you look at the cases where they found that there was no instance, like for example the Fuentes-Eraso case, they specifically – she had five years with no contact. She had a child with another man. She moved on to a different relationship. That is not the facts of this case. So there is a way to box this in a way that doesn't create sort of this undefined social group. It is a defined social group, and his continued actions reflect that. Second, I think that there's reversible error in the fact that the BIA said that Vigil did not abuse Petitioner in the months following her leaving. That – the factual record, and I think the government had a difficult time addressing this, which is there is abuse. It's emotional abuse, it's psychological abuse, and it's with the backdrop of very significant life-threatening abuse. With that, that factual finding – Did she report the hitman issue to the police? I don't think that's in the record. Isn't that kind of significant? I mean, if she's saying – if she's being threatened with her life, and she's not reporting that, is that something the IJ and BIA can take into account in determining that maybe that's not really happening, or not really abusive, or not really whatever? I don't think that's present in the record. First, I don't think there's any fact. The government never cross-examined her on that question, to my knowledge, and I would add to that that they found her credible, and they found – and there's no countervailing evidence that that happened. And I think – I think – But for CAT purposes, certainly it's pertinent to the issue of acquiescence, whether she's reporting the – because I would think regardless of whether it's your spouse, you can't murder them. So I think even – in any country, that's a crime. So that being the case, if she's not reporting it, then they can't be acquiescing in it. But she had – I think the abuse over the years, she had reported, and she continued to report in connection with the protective orders that are all exhibits in the record. Could you address the CAT issue and the acquiescence? Yes. Let me – so the CAT issue and the acquiescence, there's – I think the easiest one to start with is the police response, which is there was no police response to her protective orders. There was one instance in which they came. They were people who were paid off by her husband, that undisputed record is, and they said, okay, no arrest was made. There was no – there was no arrest. There was no trial. He never went to jail. Most of the cases cited by the government, those are the facts. And so – and the police didn't come again, even though she called the police. And so I think that fact alone gets her into CAT and gets her into the willful blindness piece. Additionally, I don't think we've mentioned, but Judge Belise, when she got the protective order and her husband organized a meeting with the mayor and with Judge Belise, and Judge Belise said to her, you need to act like a good wife and domestic violence is just part of the – part of the deal. That alone, I think, would entitle her to CAT. But what about the police commissioner moving her out? The police commissioner moving her out was done on his personal time and not in his official capacity. What evidence do we have on that? It's in the – it's in the record. Let me – I'll – it'll be somewhere in 258 to 264 is where I think that was addressed. But the police commissioner moving her out does not change the fact that the police never responded. They never arrested him. They never – they never prosecuted him. And we have in the record in multiple places where this is, in fact, a crime, and they are not enforcing it. And so even – even if this – So we don't have the issue of if the government did not make it a crime, was that acquiescence? We don't have that issue. We have the police not enforcing an existing law acquiescence issue. That's correct. Okay. That's correct. And so even if there is disagreement with the government about – about the social group as it is, the question presented to this court is, is a real person, Maria, do we send her back when we have a situation where we have very severe persecution in  protective orders? The problem that I have is, again, if I were making social policy for the United States, I might come at this very, very differently, but then I would have had to run for Congress or the Senate or the presidency or something of that nature. I'm in the third branch. We're in the third branch. We are bound by the law we're given, which is this very odd phrase on account of membership in a particular social group. And we have to apply that under the standards we've been given by the Supreme Court of high deference to the BIA and so forth. So please understand what I might do if I were queen for the day is not at all the same thing that I feel that I'm supposed to do as a judge following the law. So, I mean, I think – I completely respect that she had a very difficult time, and I think there would be prosecutorial discretion here not to pursue removal of her that the government absolutely could do but has apparently chosen not to. And, again, that's not our branch. So I appreciate what you're doing and your position, but I just want you to understand at least how I see my role. I can't do anything about the social policy or the prosecutorial discretion aspect of this very, very sad case. And, Your Honor, I understand that. I just ask that you look closely at the CAT standard because I do think there is a way under the law to address it. Thank you. Thank you. And we appreciate your taking this case pro bono, and we also appreciate the government's arguments, and we will –